## Dean v. Commonwealth.

(Decided April 19, 1935.)

JOE P. CHENAULT for appellant.

BAILEY P. WOOTTON, Attorney General, and RAY MURPHY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

At his separate trial under an indictment returned in the Madison circuit court charging him and others of unlawfully confederating and banding themselves together for the purpose of committing a felony, the appellant and defendant below John F. Dean, was convicted and sentenced to confinement in the penitentiary for one year. His motion for a new trial was overruled, and from the verdict and judgment pronounced thereon he prosecutes this appeal, urging a number of grounds as material and prejudicial errors; but our appraisement of the testimony heard at the trial convinces us that it will be unnecessary to notice only one of them and which is—that the verdict is not sustained by the testimony. The indictment charged that defendant and his confederates therein had banded themselves together for the purpose of stealing automobiles and for the purpose of dealing in automobiles that had been stolen by others with the knowledge of defendants. It was, consequently, a somewhat lengthy document, since it set out in legal form the alleged theft of a number of automobiles by defendants pursuant to the alleged conspiracy, and their receiving other stolen automobiles which they knew had been stolen.

The substantial facts developed by the common-

762

wealth were—that appellant's codefendants were engaged primarily in the handling of secondhand automobiles with their business located in Richmond, Ky., and that during a period of several years in which they were so engaged some half a dozen automobiles in the territory around Richmond were stolen, and the tracing of some of those thefts showed that the stolen cars had passed through the hands of appellant's codefendants by their handling them in their place of business in Richmond. Appellant was not a partner, according to the proof, in that business, although the indictment so charged him. For many years before that business was started appellant was connected with a bank in Berea, Ky., in the same county of Madison. The stockholders, and others interested in that bank, about the time or just before the business of handling and dealing in secondhand automobiles was started at Richmond, organized an off shoot corporation for the purpose of dealing in and handling notes executed by purchasers of automobiles. Its name was "Berea Realty & Finance Company," and after its organization appellant, who held stock therein, was placed in charge of it. As such chief manager, he purchased a number of notes that had been taken by his alleged confederates in the indictment from those to whom they had sold secondhand cars, many of which latter were later repossessed by the sellers of them, and after which they were stored in their garage at Richmond and later resold to others. A lien in each case was retained on the sold car and which made the Finance Corporation, of which appellant was manager, considerably interested in the business being conducted by his codefendants, and which required his more or less frequent visits to their place of business in order to look after and protect the investments of his corporation.

The proof was so meager against appellant's codefendants in the indictment that it was dismissed as to them after this trial was had following some two or three hung juries in other efforts to convict them. Appellant was also separately tried under the indictment once or twice before the instant trial, and in which there were like disagreements of the jury. We have searched this record in vain to find any tangible fact or circumstance of sufficient probative force to sustain the conviction. As stated, appellant was not a mem-

ber of the firm (composed of his codefendants) that handled the automobiles and who took the notes that were later financed by appellant's corporation, and, even if it had been sufficiently shown that they were guilty as charged in the indictment, or that the evidence was sufficient to submit the issue of their guilt to the jury, there would still be the failure of the testimony to connect appellant with such depredations of his codefendants. There are one or two circumstances developed in the case which are not strictly in accord with the usual and ordinary rules of conduct, but which are too immaterial and insignificant to support a conclusion of guilt. Chief among those circumstances is the fact that in taking acknowledgment to the transfer papers from the seller of a secondhand car to appellant's codefendants a colored female notary public was applied to on a few occasions and who lived some six or seven squares from the Richmond garage. This, however, is explained by the fact that the regular notary public who took such acknowledgments was for some reason away from office during one or more short periods, and some repurchased cars were obtained from colored people who recommended the colored notary public. In that way she became a kind of substitute for the regular one when the latter for any cause was not available.

An adverse inference is sought to be drawn therefrom, but, notwithstanding such a course is somewhat out of the ordinary, we are not inclined to give it any serious effect. At any rate, we are convinced that the related circumstance possesses no greater consequence than to excite suspicion and is wholly insufficient to establish guilt. Possibly some other like circumstances of no greater consequence appear in the record, but all of them combined possess no greater weight than to create surmise and possibly create suspicion against appellant's codefendants, but which alone are not sufficient to sustain conviction in a criminal prosecution. See Benge v. Commonwealth, 258 Ky. 600, 80 S. W. (2d) 569 (decided March 22, 1935); Short v. Commonwealth, 251 Ky. 819, 66 S. W. (2d) 33, and other domestic cases therein cited.

The list of domestic cases in which we have declared that convictions may not be sustained on mere surmise or suspicion could be greatly lengthened, but the rule is too well settled and too constantly followed

to require it. Our conclusion upon the sufficiency of the evidence to support the verdict is also shared by the department of the Attorney General's office in briefing this case for the appellee, as will be seen from this excerpt taken therefrom: "After a most painstaking review of the evidence, we are constrained to agree with appellant's contention. The Court of Appeals has repeatedly held that to support a conviction the evidence must do more than create mere suspicion. And, further, that a verdict of conviction must be supported by some tangible proof having a tendency to convince. Therefore, it is a rule that whenever a verdict rests on mere surmise or speculation and there is not a scintilla of evidence, direct or circumstantial, to support it, a conviction will not be permitted to stand."

Wherefore, for the reasons stated, the judgment is reversed, with directions to set it aside and sustain the motion for a new trial, and for proceedings consistent with this opinion.