## HELTON v. COMMONWEALTH.

Court of Appeals of Kentucky.

Dec. 21, 1951.

Lay & Knuckles, Pineville, Lewis & Weaver, London, R. Campbell VanSant, Frankfort, for appellant.

A. E. Funk, Atty. Gen., H. D. Reed, Jr., Asst. Atty. Gen., for appellee.

STANLEY, Commissioner.

Under three indictments and separate trials the appellant, Herman "Fats" Helton, was convicted of maliciously striking and wounding another with a deadly weapon with the intent to kill him. In one case his punishment was fixed at confinement in the penitentiary for 14 years, and in the others, 10 years each. These offenses were committed in Knox County in February, 1950. By agreement, the venue of the trials was changed to Laurel County. Twelve indictments were returned against the appellant, Helton, in connection with other parties.

The Commonwealth proved that a group of 27 automobiles containing perhaps 125 men had assembled and gone as a mob, armed with various weapons, pistols and clubs and attacked the three men named in these indictments and a number of other persons at the same and other places. They brutally beat and kicked them. Some they threw into the icy waters of a creek.

The appeals have been consolidated since the records are substantially the same. The principal contentions are: (1) the indictments were defective; (2) incompetent evidence was admitted; (3) there was misconduct on the part of the Commonwealth's attorney and the court; (4) the instructions were erroneous; and (5) he had been placed in former jeopardy.

(1) The indictments were in two counts. The first charges appellant with the crime of maliciously striking and wounding another with deadly weapons with intent to kill. The second count accuses him of "entering into a conspiracy for the purpose of maliciously striking and wounding." Appellant demurred to each indictment on the ground that two separate and distinct offenses are charged; contending the first is a violation of KRS 435.170, and the second is a violation of KRS 437.110. The latter statute provides that no two or more persons shall confederate themselves together for the purpose of intimidating, alarming, disturbing or injuring any person. If two distinct statutory offenses are charged, the indictments would be demurrable under the ruling of Jones v. Commonwealth, 303 Ky. 106, 196 S.W.2d 972.

■ It is apparent, however, that the second count of the indictments simply describes a different means by which the crime of maliciously striking and wounding was committed. This is specifically authorized by Section 126(1) of the Criminal Code. No attempt is made in the indictments to charge two different crimes, and they were not defective in this respect. See Napier v. Commonwealth, 306 Ky. 75, 206 S.W.2d 53.

■ Indictment No. 2569 was for an assault upon Douglas Noonan. At the opening of the trial the court made a statement to the jury panel condemning subversive organizations and making inquiry as to any possible connection of the venireman with such disloyal groups. The statement is susceptible to the interpretation of associating the miners' union with them. Since the judgment must be reversed upon other grounds, we need express no further opinion than that the statement was ill advised.

The other indictments were for assaults upon Douglas Blair near Barbourville, the same place Noonan was attacked, and upon James Ferguson at Kay Jay, about nine miles distant. Other than the improper statement referred to, the grounds upon which the reversal of the judgments is sought are the same in the three appeals.

■ The alleged incompetent testimony is the description of the occurrences and assaults committed upon other persons the same morning by the same group, some of which took place several miles away from the scene of the assault for which the accused was then being tried. Those assaults were committed in the same brutal manner and by the same mob in the apparent attempt to keep the victims from working in the mines even though the strike had officially ended. This is the same notorious work stoppage of miners throughout the country for which national labor leaders were convicted of contempt of court for violating injunctions.

■ It is, of course, the general rule that evidence of other crimes is incompetent, because it might induce the jury to convict for the other crimes rather than the one charged, or to increase the punishment. See Green v. Commonwealth, 17 Ky.Law Rep. 943, 33 S.W. 100, and Johnson v. Commonwealth, 144 Ky. 287, 137 S.W. 1079. However, there are exceptions to this general rule.

■ It is an accepted principle that the commission of other crimes may constitute a part of the res gestae, or such evidence may be admissible for the purpose of identifying the accused, to show motive and criminal intent, or to show that the crime for which the defendant is being tried is a part of a criminal scheme or plan. See Clary v. Commonwealth, 163 Ky. 48, 173 S.W. 171; Simmons v. Commonwealth, 210 Ky. 33, 275 S.W. 369; Hudson v. Commonwealth, 249 Ky. 845, 61 S.W.2d 874; and McPeak v. Commonwealth, 308 Ky. 29, 213 S.W.2d 447.

■ The evidence of the other incidents which took place on that morning served to identify appellant as being a member of the mob, which was an important question

in the case because his defense was that he was not a member and not present. These other events likewise showed a criminal scheme, developed the motive for the crime, and were all related parts of essentially the same transaction. It also proved the charges that the several crimes were committed pursuant to a conspiracy. Clearly this evidence was admissible. The court, in his written instructions, properly admonished the jury respecting the evidence.

The testimony that the President of the United States and the President of the United Mine Workers had issued calls for the miners to return to work and produce coal was immaterial and should not have been admitted, though probably it was not prejudicial.

(3) Complaint is made that questions were asked concerning the membership of certain witnesses in the United Mine Workers' organization. Since appellant was a member of this union, it was proper to show that those testifying, or working in the case on his behalf, were likewise members as it would tend to show their bias and might affect their credibility. It was perhaps irrelevant to bring out the fact that appellant's attorneys also represented this union, but this could hardly constitute reversible error. There are objections to other bits of evidence, which we think are without merit.

(4) Instruction No. 1, which authorized the jury to find the defendant guilty as a principal or as an aider and abettor, is fatally defective. The first part, which covers the question of guilt as the principal, seems to be in proper form with the exception of the omission of a necessary element of the crime defined by the statute under which the indictment was returned, namely, KRS 435.170(2). By this statute, the common law misdemeanor of assault and battery is made a felony where it is accompanied by an intent to kill, but not otherwise. The instruction must, therefore, condition the verdict of guilt upon the finding of such a criminal intent, for that is the gravamen of the crime. Bailey v. Commonwealth, 70 S.W. 838, 24 Ky.Law Rep. 1114; Delph v. Commonwealth, 300 Ky. 722, 190 S.W.2d 340; Anglin v. Commonwealth, 310 Ky. 15, 219 S.W.2d 972. This element of an intent to kill was omitted from the instruction. We cannot agree with the argument of the Attorney General that it was sufficiently covered by the clause which predicated guilt upon assault "with a pistol, a deadly weapon or other instrument reasonably calculated to cause death in the manner in which the same was used."

The second part of the instruction submitted the alternative condition of guilt as an aider and abettor of an unknown principal. It required the jury to believe that the principal had maliciously and wilfully struck and wounded the person named and that the defendant, Helton, had aided and abetted the principal, "if any there was, who did such striking and wounding, with intent to kill the said" person named in the indictment. It did not require the belief that Helton had acted maliciously and wilfully in aiding the principal, nor that the jury should believe beyond a reasonable doubt that he had so aided. The instruction is ambiguous as to the element of an intent to kill. The term may be construed as referring either to the principal or to Helton as an aider and abettor. In any event, it was erroneous. It was an error to omit the condition of belief beyond a reasonable doubt. Benge v. Commonwealth, 258 Ky. 600, 80 S.W.2d 569. However, this was not prejudicial for it was cured by instruction No. 4 which reads: "If upon the whole case you have a reasonable doubt of the defendant having been proven guilty under the evidence, under one or more of the instructions above set out, you will find the defendant not guilty."

Subsection (6) of KRS 435.170 merely declares that any person shall be similarly punished who "aids, counsels, advises or encourages another person in committing any offense described" in the preceding subsections. But it seems to us that where malice and wilfullness and an intent to kill are declared as a condition of guilt of a principal, the same predicate must be laid down, or the same condition must

be found, in order to convict an aider and abettor. To constitute one an aider and abettor, he must share the criminal intent or purpose of the principal. Whitt v. Commonwealth, 221 Ky. 490, 298 S.W. 1101. Therefore, it was prejudicially erroneous to omit the essential elements of malice and wilfullness, Johnson v. Commonwealth, 313 Ky. 17, 230 S.W.2d 69, and likewise to omit the element of an intent to kill as above described.

Substantially the same vices appear in instruction No. 2 which predicated guilt of the defendant upon a conspiracy with someone who did the actual striking and wounding. In addition, the necessity that a deadly weapon must have been used in the commission of the assault was not included.

It is not possible for us to agree with the argument of the Commonwealth that when read as a whole, the instructions should be regarded as not. prejudicial in any of these particulars.

By instruction No. 3 the court submitted as a lesser degree of the statutory felony the misdemeanor described in KRS 435.180, namely, shooting or cutting another in sudden affray or in sudden heat of passion without previous malice. It has been the consistent construction of KRS 435.170(2) that where the evidence authorizes it, an instruction on the common law misdemeanor of assault and battery should be given because striking with a deadly weapon without malice or intent to kill is not embraced in KRS 435.180. Commonwealth v. Hawkins, 74 Ky. 603, 11 Bush 603; Burgess v. Commonwealth, 176 Ky. 326, 195 S.W. 445; McIntosh v. Commonwealth, 275 Ky. 126, 120 S.W.2d 1031.

None of the victims of the mob was killed. None of them was armed. All undertook to defend themselves with their fists. With the weapons which the Commonwealth proved the defendant and other members of the mob used, it would have been easy to have killed the persons assaulted. In at least one instance a leader cautioned the active assailant to put up his pistol and not to kill. From all this the jury may have drawn the inference that there was, in fact, no intent to kill. Without the gravamen of murderous intent, as we have said, the offense was assault and battery. An instruction on that misdemeanor should have been given instead of instruction No. 3, although the substitution may not have been prejudicial since the jury found the defendant guilty in each case of the felony charge rather than under the misdemeanor instruction that was given. Riggs v. Commonwealth, 33 S.W. 413, 17 Ky.Law Rep. 1015.

(5) In the last of the cases for which he was tried, the appellant entered a plea of former jeopardy on the ground that he had been convicted of a conspiracy in the previous trials. The crime proven was that of maliciously striking and wounding another, either by his own hand or by acting in concert with others who committed the specific act. Each assault constituted a separate crime, and his plea of former jeopardy was unfounded.

It is the heart of our social and political system that every man may follow his own way of life peaceably, unafraid, unthreatened and unhindered. The record establishes vicious violence of a mob in an effort to accomplish their purposes of intimidating and coercing men from exercising their free right to work and earn a livelihood, and that the accused, Helton, was an active participant. The jury found that to be a fact, and the several penalties are not too severe. But this government of ours also gives to every citizen the protection of due processes of law in the accusation and trial of charges that he has not accorded the same respect for the rights of his alleged victim. In recognition of that, we are constrained to reverse the several judgments of conviction for the errors described that there may be other trials conducted in accordance with the established legal principles of fairness and justice.

The several judgments are reversed.