KELLY v. COMMONWEALTH.

Court of Appeals of Kentucky.

April 20, 1954.

R. Kent Sampson, Harlan, for appellant.

J. D. Buckman, Jr., Atty. Gen., Earl V. Powell, Asst. Atty. Gen., for appellee.

MOREMEN, Justice.

Appellant, Billy Gerald Kelly, was found guilty of voluntary manslaughter and his punishment was fixed at confinement in the penitentiary for a period of 5 years.

On October 18, 1952, appellant, who at the time was 19 years old, was driving his automobile, a 1940 Oldsmobile, in an easterly direction on Kentucky Highway No. 38, near Closplint, Harlan County. As he entered a slight curve in the road, his automobile went out of control causing it to strike a concrete embankment on the left-hand side of the road, after which it ricocheted across the road to the right and struck Nannie Bowman and her daughter, Beatrice Davis, who were on the side of the road. The injuries they received resulted in death to both of them.

The description in the record of the area where this accident occurred is not too clear but it appears that a river, a railroad track and the highway, which is about 18 to 20 feet wide, are approximately parallel, with the road between the river and the railroad tract. The road is practically straight. There seem to be no buildings, with the exception of a company store, immediately at the point where the accident happened but we gather from the record that several hundred feet away from the point of the accident were closely built-up mining camps so that the general nature of this area, with the exception of several hundred feet near the point of the accident, must be considered as being well built up and thickly populated.

In order to support the accusation contained in the indictment that appellant had operated his automobile "in a negligent and reckless and grossly negligent and reckless and wanton manner," the commonwealth introduced proof to the effect that appellant was operating the vehicle through the above described territory at a high rate of speed and insists that since he must be held to have intended the natural consequences of his act, his deed was, in effect, voluntary. The question of the speed of the vehicle, as shown by the evidence, will be discussed later.

Appellant urges as grounds for reversal: (1) the names of all the witnesses who were examined by the grand jury were not written at the foot of or on the indictment and defendant's motion for a peremptory instruction at the conclusion of evidence offered by the commonwealth should have been sustained because the proof failed to show that any witnesses appeared before the grand jury; (2) the court erred in permitting evidence to be introduced concerning the death of Beatrice Davis when appellant was being tried for the manslaughter of Nannie Bowman; (3) the court erred in failing to instruct the jury concerning the whole law of the case.

In connection with the first contention, it is pointed out that appellant was indicted twice for this offense. The first indictment, which was returned in October, 1952, having been quashed upon motion of the commonwealth's attorney, the case was re-submitted and in January of 1953, the grand jury returned the indictment under which appellant was subsequently tried and convicted. At the foot of the indictment in conformity with Section 120 of the Criminal Code of Practice, the names of several witnesses who had appeared before the grand jury were set forth. At the trial of the case no one of these witnesses was asked if he had appeared before the grand jury and had given evidence under which the indictment was returned. Because of this failure appellant argues that the commonwealth failed to make a case.

In Young v. Commonwealth, 141 Ky. 708, 133 S.W. 791, Section 120 of the Criminal Code was under consideration in a case where the commonwealth had been permitted to introduce witnesses whose names did not appear on the indictment and it was not shown that they had appeared before the grand jury. In deciding this question the court quoted with approval from Dowell v. Commonwealth, 108 S.W. 847, 32 Ky. Law Rep. 1344, the following language:

"The purpose of this statute is to inform the defendant of the names of his accusers. It is directory, and ought to be complied with. But a failure to do so neither invalidates the indictment nor prevents the introduction of the witnesses whose names do not so appear."

In Thompkins v. Commonwealth, 90 S.W. 221, 28 Ky.Law Rep. 642, it was held that Section 120 of the Criminal Code of Practice did not prevent the commonwealth from calling witnesses who were not examined before the grand jury and whose names were not on the indictment. See also Section 1764 of Roberson's New Ky. Criminal Law and Procedure.

In view of the above we have concluded that it is not necessary for the commonwealth, in order to prove its case, to ask each witness whether or not he testified before the grand jury.

We find no merit in appellant's contention that the court erred in permitting evidence to be introduced concerning the death of Beatrice Davis when appellant was being tried for the manslaughter of Nannie Bowman because this case clearly falls under the rule that proof of another crime is admissible where the facts are so interwoven as to be inseparable. Sneed v. Commonwealth, 236 Ky. 838, 34 S.W.2d 724; Conley v. Commonwealth, 273 Ky. 486, 117 S.W.2d 189. Furthermore, the commonwealth's attorney made no attempt to inject into the record the fact that two persons had been killed. Some of the witnesses in describing the accident related the full facts, but at no time did the commonwealth attempt to emphasize it.

Finally it is insisted that the court failed to instruct as to the whole law of the case. A voluntary manslaughter instruction was given which required a finding of reckless or wanton conduct. An instruction was given covering the recently created offense defined by KRS 435.025 which requires only ordinary carelessness to sustain a conviction. But the jury was not instructed concerning involuntary manslaughter which results when gross negligence is involved.

In Marye v. Commonwealth, Ky., 240 S.W.2d 852, 855, the degrees of negligence necessary to sustain charges of voluntary manslaughter and involuntary manslaughter were thoroughly discussed and the court concluded:

"It is our view that instructions in voluntary manslaughter cases should require a finding of reckless and wanton conduct, and instructions in involuntary manslaughter cases should require a finding of gross negligence in order to authorize a conviction."

It was also noted in the opinion that more than ordinary negligence was required in order to support a verdict of guilty in either case.

In the year following the date of the opinion in the Marye case the General Assembly passed an act which, after it became effective, was codified as KRS 435.025. It reads:

"Any person who, by negligent operation of a motor vehicle, causes the death of another, under circumstances not otherwise punishable as a homicide, shall be imprisoned in the county jail for not more than one year."

A statute of this nature is not novel. The opinion in the Marye case lists similar statutes that are in effect in other states.

It is plain from the words used and exception contained in the act—"under circumstances not otherwise punishable as a homicide"—that the new offense need not contain the element of malice. It applies to cases where one undesignedly kills another as the result of ordinary negligence in the operation of an automobile. The act merely makes criminal something that theretofore was innocent and ordains future punishment for those who kill by such negligence. It is therefore but a new and lesser degree of the crime of manslaughter.

In a criminal case it is the duty of the court to prepare and give instructions on the whole law and this rule requires instructions applicable to every state of case deducible or supported to any extent by the testimony. Stanley's Instructions to Juries, Section 760; Hendrickson v. Commonwealth, 235 Ky. 5, 29 S.W.2d 646; and Smiley v. Commonwealth, 235 Ky. 735, 32 S.W.2d 51.

At the time the alleged offense was committed in the case at bar, as we have shown above, there existed in this state three degrees of manslaughter: (1) voluntary manslaughter requiring the greatest degree of negligence and carrying the greatest penalty (2 to 21 years in the penitentiary); (2) involuntary manslaughter involving the intermediate degree of gross negligence and punishable by a lesser penalty of confinement up to 12 months in the county jail or a fine up to $5,000, or both; and (3) the statutory offense requiring the lowest degree of ordinary negligence and carrying the smallest penalty of confinement in the county jail up to a period of 12 months.

Under the evidence produced in this trial, the jury might well have found defendant guilty of any one of the three offenses or might have found him innocent, depending upon which group of witnesses they believed or upon which type of negligence they found the defendant to be guilty; or, if the jury had accepted the version of the accident given by several reputable witnesses, a verdict of not guilty would have been amply justified. In fact, the conviction under the voluntary manslaughter instruction could be sustained only because this court has concluded that if it is true the defendant operated his old car at a speed estimated to be between 50 and 60 miles per hour on a narrow road in a well built-up community in utter disregard of human life, he was guilty of wanton and reckless negligence and therefore subject to the penalty prescribed for voluntary manslaughter. However, under the testimony adduced, the jury might well have found him guilty of the intermediate degree of gross negligence and imposed the sanction applicable to that particular offense, or might have only found him guilty of ordinary negligence and applied the lowest penalty.

We think the failure of the court to offer the jury the intermediate choice was error and upon a retrial of this case an instruction upon the three phases of manslaughter should be given.

It has been suggested that since the defendant was found guilty of voluntary manslaughter the correctness or incorrectness of other instructions concerning manslaughter are of no concern and attention has been directed to the recent case of Cravens v. Commonwealth, Ky., 262 S.W.2d 466, where it was said that when the jury fixes a sentence at more than the minimum prescribed for the offense for which the accused was found guilty, an incorrect instruction for a lesser offense did not con-

stitute prejudicial error. However, cases of this tenor usually involve situations where a defective instruction was given along with a correct instruction under which the accused was convicted. We do not have this situation here because no instruction was given at all concerning the intermediate degree of negligence and in such a state of case we believe the rule as to the court's duty to instruct as to the full law of the case takes precedence.

For the reasons given, the judgment is reversed.